## AUGUSTINE HERRERA v. THE STATE.

No. 3867. Decided December 8, 1915.

### 1.—Murder—Special Venire—Sheriff's Return.

Where appellant contended that the return of the officer on the special venire showed he had not summoned all the jurors therein named and failed to give sufficient reason therein why he had not summoned them, but the record

showed that the sheriff amended his return, showing specifically why he had not summoned said absent jurors, and the court issued proper attachments for such jurors, and there was nothing to show that they had not been obtained there was no error in overruling the motion to quash the special venire.

### 2.—Same—Jury Wheel Law—Constitutional Law—Discrimination.

The Act of 1911, amending the original jury wheel law, is not unconstitutional and void because the certain officers designated to place in the jury wheel the names of jurors as required to select from the lists of qualified jurors of such counties, as shown by the tax lists in the tax assessor's office for the current year, the jurors for service in the District and County Court of such county, whereas in all counties not placed under the provisions of the jury wheel law, all male persons over 21 years of age are competent, unless disqualified by the provisions of the law, and that such constitutes an unlawful and unjust discrimination.

### 3.—Same—Classification—Reasonable Grounds—Jury Wheel Law.

The jury wheel law in this State is made applicable alone to counties that now contain, or may hereafter contain, a city of twenty thousand inhabitants, or more, and there are no unreasonable grounds why, under the jury wheel law, those to select jurors were limited to names appearing on the tax lists, while those to select jurors containing no such city are not so limited; and if in the opinion of the Legislature a reason existed for making the distinction, the law is not invalid, and there is no arbitrary classification, as the law applies alike to all counties of the same class.

### 4.—Same—Evidence—Bias of Witness—Impeaching Witness.

A witness can not be impeached upon an immaterial issue, and while it is always material to prove interest, bias, motive for animosity of a witness as affecting the weight to be given his testimony, yet when he admits that he entertains animosity, and in no manner seeks to deny it, the truth or falsity of the reason he gives why he entertains such a state of feeling would be immaterial.

### 5.—Same—Statement of Facts—Ground for Reversal—Stenographer.

Where, upon appeal from a conviction of murder, it appeared from the record that there was no order or judgment entry made on defendant's motion asking that the official stenographer make out a statement of facts because defendant was unable to pay therefor, and further showed an order granting sixty days in which appellant could prepare and have filed a statement of facts, and that no further steps were taken with reference thereto, and also showed that there was a complete statement of facts agreed to and filed on the former appeal in this case, there was not sufficient diligence to show that the appellant was denied a statement of facts without fault on his part; especially in the absence of an application to this court for the necessary process to require the official stenographer of the trial court to file a statement of facts, and there is no reversible error on this ground. Following Burden v. State, 70 Texas Crim. Rep., 349.

### 6.—Same — Rule Stated — Pauper's Affidavit — Official Stenographer — Practice.

While not necessary to a decision of this case, this court will say that when the affidavit has been filed by one who has given notice of appeal, that he is unable to pay for having made out a statement of facts by the stenographer, or to give security therefor, it is the duty of the trial court, upon the refusal of the stenographer to comply with the law, upon application to compel the stenographer to do so; in the absence of a contest filed by the stenographer and an order of the court sustaining the same, and if the trial court fails to do so, this court, after jurisdiction attaches thereto, upon proper application, will require the stenographer to do his duty.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary

The opinion states the case.

*Swearingen & Ward* and *Jno. H. Bickett,* Jr., for appellant.—On question of unconstitutionality of jury wheel law: Barbier v. Connolly, 113 U. S., 27; Tinsley v. Anderson, 171 id., 101; Duncan v. Missouri, 152 id., 377; McGonn v. Illinois, 170 id., 283; A., T. & S. F. Ry. Co. v. Mathews, 174 id., 96; Clark v. Finley, 93 Texas, 171, and cases stated in opinion.

On question of statement of facts and official stenographer: Lyster v. State, 68 Texas Crim. Rep., 257, 151 S. W. Rep., 302; Wertheimer v. State, 171 S. W. Rep., 224; Hubby v. Harris, 63 Texas, 456; Smith v. Oil Co., 99 id., 77.

*C. C. McDonald,* Assistant Attorney General. for the State

HARPER, JUDGE.—Appellant was convicted of murder, and his punishment assessed at twenty-five years confinement in the penitentiary.

This is the second appeal in this case, the opinion of the court on the former appeal being reported in 75 Texas Crim. Rep., 120, 170 S. W. Rep., 719.

There are but four bills of exception in the record, the first contending that the court erred in refusing to quash the special venire summoned in the case, because the return of the officer showed he had not summoned all the jurors issued for, and no sufficient reason stated in the return why they had not been summoned. The record before us shows that when this motion was filed, on motion of the district attorney, the sheriff was required to amend his return and show specifically why he had not summoned each of those whom he had not summoned. After this return was thus amended, for all those whom the return failed to show a legal reason for not summoning, the court ordered an attachment to issue for such jurors, and they must have been obtained as no further complaint was made. Under such circumstances the court did not err in overruling the motion to quash on this ground. Appellant also moved to quash the venire on the ground that the jury wheel law is unconstitutional. In counsel's brief and in able oral argument made before this court, counsel admits the validity of this law has been upheld by this court in a number of decisions. (See Merkel v. State, 75 Texas Crim. Rep., 551, 171 S. W. Rep., 738, where the authorities are cited.) It is true that as to the Act of 1907 there was a dissent filed to the nolding that the law was valid, but in 1911 this law was amended, and the grounds of the original dissent remedied, and since then this court and the civil courts have been unanimous in sustaining the validity of the law. Appellant, however, insists that the ground he here presents was not passed on in any of the many

cases sustaining this law. His contention is, that the Act of 1911 is unconstitutional and void because the certain officers designated to place in the jury wheel the names of jurors as required to select from the lists of qualified jurors of such counties, *as shown by the tax lists in the tax assessor's office for the current year,* the jurors for service in the District and County Courts of such county, whereas in all counties, not placed under the provisions of the jury wheel law, all male persons over twenty-one years of age are competent, unless disqualified by the provisions of the law; that in thus limiting the persons authorized to place the names in the jury wheel to those whose names appear on the tax lists constitutes an unlawful and unjust discrimination against defendants to be tried in counties where the jury wheel law is in force. In support of his contention he cites many cases, among them being the Ellis case, 165 U. S., 150, wherein it was held by the Supreme Court: "The mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear, not merely that a classification has been made, but also that it is based on some reasonable grounds— something which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection." The other authorities cited but emphasize this rule of law, and as we accede to its correctness, we see no necessity to quote them. The jury wheel law in this State is made applicable alone to counties that now contain or may hereafter contain a city of twenty thousand inhabitants or more. Now, are there any reasonable grounds, outside of mere arbitrary classification, why, under the jury wheel law, those to select jurors were limited to names appearing on the tax lists, while those to select jurors containing no such city are not so limited? If not, then appellant's contention may be sound, but if in the opinion of the Legislature a reason existed for making the distinction, the law is not invalid. It is known that in the cities and larger towns there is a shifting, drifting population whose names never appear on the tax lists, which is not found in the rural communities and smaller towns, and if it was the object and purpose of the Legislature to exclude this class from the jury box, we can not say they had no authority to do so. It is generally a class that has not much interest in their state or government generally, and in this shifting, drifting population are found those who render crime much more general in the larger cities than in the rural communities. Common experience would teach us that in the main that class would not only not constitute desirable jurors, but are not counted very desirable citizens. That some young men who may become of age during the year would be excluded from jury service during a short period of time would not render the law invalid, if it was found necessary to adopt the law to reach the objectionable class. There is no arbitrary classification, for the law applies alike to all counties of the same class, and we adhere to the opinion that the law is valid.

In the next bill, and the qualification of the court in approving the same, it is made to appear that Francisca Gleason, a witness for the

State, had testified that from the inception of the case she entertained a feeling of bitterness and animosity towards appellant, and had stated in answer to questions, as a reason for so doing, that Luz Cruz had told her appellant had said "she was not a maiden" and "was not a lady." It is thus seen that the witness admitted she entertained a feeling of bitterness and animosity towards appellant, and this was material. When she gave as a reason why she entertained this feeling, that Luz Cruz had given her certain information, it would be immaterial whether or not Luz Cruz had given her the information, and the court did not err in so holding. A witness can not be impeached upon an immaterial issue in the case. It is always material to prove interest, bias, motive or animosity of a witness, as affecting the weight to be given the testimony of the witness when she admits she entertains animosity, and in no manner seeks to deny it, the truth or falsity of the reason she gives why she entertains such a state of feeling would be immaterial,— it is the state of feeling that is material.

The only other bill of exceptions in the record (outside of the one complaining that the court erred in overruling his motion for a new trial) is one in which appellant contends he has been deprived of a statement of facts without fault or negligence on his part. We will say here that the only ground this could be material on in this case would be the one in the motion for a new trial in which he contends that the evidence is insufficient to sustain the verdict. There was no exception reserved to the charge as given, nor any special charge refused, so the question of whether or not the law was submitted to the jury as applicable to the evidence is not an issue on this appeal. As hereinbefore shown, this case was before us on a former appeal, and in that case there was a full statement of the evidence then adduced, and if the evidence on this trial was similar we would not hesitate to hold it amply sufficient to sustain the verdict. But if appellant has been deprived of a statement of facts without fault or negligence on his part the case should be reversed, for he is entitled to have this court pass on that issue under the evidence heard on this trial. The motion for a new trial was overruled on August 27th, and on the same day appellant was granted sixty days after adjournment of court in which to prepare and have filed a statement of facts in this cause. Before the overruling of the motion for a new trial, appellant, on August 25th, filed an affidavit in which he stated that his case having been appealed, he was without funds and was not able to pay for a statement of facts or to give security therefor, and he prayed that the official stenographer be required to make out a statement of facts for him. How appellant knew on August 25th the court two days later would overrule his motion for a new trial is not made manifest by this record. Certainly the case had not been appealed on August 25th, and notice of appeal was not given until two days later, August 27th, when his motion for a new trial was overruled, and sentence pronounced against him on August 27th. No appeal would lie until this sentence was pronounced. Certainly the court would commit no error in refus-

ing to entertain the affidavit until after the motion for new trial had been overruled and sentence pronounced, because it would not be known prior to that time whether or not an appeal would be necessary, and an appeal certainly would not lie. However, on the day the motion for a new trial was overruled appellant's counsel filed the following motion: "Now comes the defendant, Augustine Herrera and represents to the court, his case having been appealed, that he is without funds and is unable to pay for a statement of facts; all of which is more fully shown by the affidavit of defendant filed on the 25th day of August, 1915, to which reference is hereby made.

"Wherefore, he prays the court that the official stenographer be ordered to make out a statement of facts in duplicate in this cause and to deliver them as provided in article 846 of the Code of Criminal Procedure."

There is no order or judgment entry made on this motion in the record before us, if any was ever made. Certainly if this motion was presented to the court and he made any order thereon, the record should show such order was entered in the minutes of the court. However, in a bill of exceptions it is stated the court overruled defendant's said motion and declined to make an order requiring the stenographer to make out a statement of facts, to which ruling of the court defendant excepted, which bill is approved by the court without qualification, yet the court on that day, August 27th, did make an order granting sixty days in which appellant could prepare and have filed a statement of facts at appellant's instance. No further steps were ever taken after this, the 27th day of August, by appellant to obtain or have filed a statement of facts in this cause, other than to get his extension of time. Why he should desire an extension of time is not shown, if no other effort was to be made, for the bill of exceptions discloses that at this time the court stenographer had refused to make out the statement of facts without pay, and the court had refused to make an order requiring him to do so. As said before, there was a complete statement of facts made, agreed to, and filed on the former appeal in this case, and why appellant and his counsel could not take that statement of facts, and with it to refresh their memory, make out and have filed a statement of facts on this trial, is not manifest to us. The Code specifically authorized them to make out a statement of facts, as was formerly done, and present it to the court. This they did not do, although granted sixty days in which to do so. After the court had overruled their motion, without taking other action, they come now and ask us to reverse the case because appellant has been deprived of a statement of facts without fault or negligence on his part. It seems to us that there was legal negligence at least, for this court has held that if the stenographer refuses to make out a statement of facts, and the court refuses to require him to do so, upon application to us we would issue the necessary process to require the stenographer to make out and file a statement of facts in those instances that the law requires him to do so. (Burden v. State, 70 Texas Crim. Rep., 349.) No

reason is assigned why appellant, during the time allowed by the court, and the time allowed by law, did not apply to this court for an order requiring the stenographer to make out a statement of facts. He says the trial court refused to require the court stenographer on August 27th to make out a statement of facts, yet he takes no further steps to obtain a statement of facts, when we had plainly, in the Burden case, indicated the steps necessary to be taken by him, after the jurisdiction of this court had attached by having notice of appeal entered of record. This was done August 27th, and at any time thereafter upon application to this court, the necessary orders would have been made requiring the stenographer to make out a statement of the facts adduced on the trial. But appellant takes no action in the premises, and now desires that we reverse the case. Trials are expensive; they take up the time of the court, the jurors and the witnesses, and the witnesses, at least, who must attend court without pay, have rights as well as appellant. We always regret to have a record come before us without a statement of facts, for in those cases in which the law provides an appeal may be prosecuted, it is his right under the law to have a correct record presented to this court, and if he has not been given that fair and impartial trial guaranteed to him by law, have his case reversed and a new trial granted. Soon after the adoption of the stenographer's law this court had the question before it, if appellant filed an affidavit of his inability to pay for a statement of facts, this would be all the diligence required by the law, and it was held by this court in Peddy v. State, 63 Texas Crim. Rep., 483, following the rule established by the civil courts, that this was not diligence, but application must be made for a writ of mandamus to require the stenographer to do his duty, and if this was not done, appellant would not be entitled to a reversal of his case. And following the rule thus established, in the Burden case, supra, we held that if the trial court did not do his duty application should be made to this court, and we would require the stenographer to do his duty, and if a statement of facts could not thus be obtained, the case would be reversed. No such showing being made in this case—no application having ever been made to this court, at any time to issue a writ, diligence has not been used by appellant to obtain a statement of facts, and he is not entitled to a reversal of the cause.

While not necessary to a decision of this case, we will say that when the affidavit has been filed by one who has given notice of appeal, that he is unable to pay for having made out a statement of facts by the stenographer, or to give security therefor, it is the duty of the trial court, upon the refusal of the stenographer to comply with the law, upon application to compel the stenographer to do so. It may be insisted that a laborer is worthy of his hire, and no man ought to be compelled to do work for which there is no compensation provided, but whenever a stenographer accepts the appointment as official court stenographer he does so under the law, and he must assume its burdens as well as accept its benefits. He is paid $5 per day for each and every

day he may attend upon the court, and in addition thereto he is permitted and authorized to make an extra charge of all litigants who are able to pay for a transcript. But the law will not and does not close its door to the poor and indigent. They are entitled to their day in court—to have their wrongs, if any they have suffered, corrected and justice meted out to them, no matter how poor they or he may be. Lawyers, sheriffs, clerks, stenographers and all officers of the court are required by law to perform certain duties without pay, when a defendant or other litigant is unable to pay. If the stenographer, when this affidavit is filed, thinks it does not truly state the facts he may file a contest, giving reasons why he thinks the affidavit does not state the facts, and if he does so, the court should hear evidence and determine the issue. If no contest is filed, it is the duty of the court whenever the affidavit is filed, as provided in section 8, chapter 119, of the Acts of the Thirty-second Legislature, to make an order requiring the court stenographer to make out a statement of facts, and see that this order is complied with. If the trial court will not do so, and after the jurisdiction of this court has attached the facts are made known to this court by affidavit and proper application, we will require the stenographer to do his duty.

The judgment is affirmed

*Affirmed.*